# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **ERIK COOK,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 24-3713** |
| **TEMPLE UNIVERSITY HOSPITAL,** | |
| **Defendant.** | |

## <u>MEMORANDUM OPINION</u>

**Rufe, J.**                                                                                           **May 4, 2026**

Plaintiff Eric Cook filed suit against Defendant Temple University Health System ("TUHS")[1] alleging that he was wrongfully terminated due to his race. Specifically, Cook alleges race discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981.[2] TUHS has moved to dismiss Plaintiff's second amended complaint. For the reasons stated below, the motion will be granted.

### I.    BACKGROUND[3]

#### a.  Factual Background

Erik Cook is a 42-year-old African-American man who worked for the Defendant as an HVAC mechanic for approximately two years prior to his termination on January 19, 2022.[4] Mr. Cook was the sole African-American male employee in his HVAC department.[5] Cook alleges

---

[1] Plaintiff named Temple University Hospital — Jeanes Campus as the Defendant in the Amended Complaint. Defendant has noted the proper name is Temple University Health System. Mem. Law. Supp. Mot. Dismiss at 1 n.1 [Doc. No. 11-2]

[2] Second Am. Compl. ¶ 4 [Doc. No. 17].

[3] The facts as alleged in Cook's Second Amended Complaint are taken as true for the purposes of the Motion to Dismiss.

[4] Second Am. Compl. ¶ 7 [Doc. No. 17].

[5] Second Am. Compl. ¶ 8 [Doc. No. 17].

that during his employment, "he was subjected to repeated harassment and discriminatory treatment by his white colleagues and supervisors, which culminated in his wrongful termination on January 19, 2022."[6] Mr. Cook describes three specific events that he argues led to a hostile work environment: at one point, he discovered a swastika in his workspace which, when reported to management, went unaddressed; he was also accused of theft by his white colleagues, which he asserts was a false accusation; and Mr. Cook claims he reported a white coworker for ignoring work orders to his supervisor, who required Mr. Cook to resolve the issue.[7] The first two events as alleged in the Second Amended Complaint closely match the allegations contained within Plaintiff's First Amended Complaint.[8] Mr. Cook brought both of these incidents to his supervisor, but no corrective action was taken and the misconduct went unpunished.[9] Additionally, Mr. Cook alleges that "similar misconduct by white employees [was allowed] to go unpunished" including an incident when, after reporting to management that a white employee was "ignoring work orders, failing to clean up after repairs and committing other infractions," Mr. Cook was ordered "to clean up [the coworker's] messes."[10]

Mr. Cook also asserts that he experienced differential treatment in the enforcement of COVID-19 policies.[11] On January 10, 2022, Mr. Cook was sent home from work after contracting COVID-19.[12] He was scheduled to return to work on January 12, but was informed

---

[6] Second Am. Compl. ¶ 8 [Doc. No. 17].

[7] Second Am. Compl. ¶ 10 [Doc. No. 17].

[8] *See* Am. Compl. ¶¶ 8-10 [Doc. No. 10]. Plaintiff's Second Amended Complaint includes only slightly more details regarding the allegedly false accusation by management and others that he stole a found wallet stating that "The security manager grabbed Plaintiff and physically restrained him after he

found the wallet." Second Am. Compl. ¶ 11 [Doc. No. 17].

[9] Second Am. Compl. ¶ 13 [Doc. No. 17].

[10] Second Am. Compl. ¶ 14 [Doc. No. 17].

[11] Second Am. Compl. ¶ 17 [Doc. No. 17].

[12] Second Am. Compl. ¶ 15 [Doc. No. 17].

he was under investigation for allegedly violating COVID-19 policies during his absence.[13] He argues that he was falsely accused of violating COVID-19 policies, which served as pretext for his termination.[14] TUHS terminated Mr. Cook on January 19, 2022, citing COVID-related reasons.[15]

### b. Procedural Background

Mr. Cook brought suit in the Philadelphia Court of Common Pleas, which TUHS timely removed to this Court on the basis of federal question jurisdiction.[16] TUHS moved to dismiss the initial complaint, and Mr. Cook moved to file an Amended Complaint. Federal Rule of Civil Procedure 15 permits amendment once as a matter of course no later than 21 days after service of a responsive pleading. Mr. Cook moved to amend within 21 days, so the Court accepted and docketed the Amended Complaint.[17] TUHS moved to dismiss the First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[18] This Court granted TUHS's Motion and Dismissed Plaintiff's First Amended Complaint without prejudice, granting Plaintiff leave to file a further amended complaint.[19]

---

[13] Second Am. Compl. ¶ 15 [Doc. No. 17].

[14] Second Am. Compl. ¶ 15 [Doc. No. 17].

[15] Second Am. Compl. ¶ 17 [Doc. No. 17].

[16] Notice Removal [Doc. No. 1]

[17] See Fed. R. Civ. Pro. 15(a)(1)(B); see also Order [Doc. No. 9]; First Am. Compl. [Doc. No. 10].

[18] Mot. to Dismiss First Am. Compl. [Doc. No. 11].

[19] Order [Doc. No. 16].

On September 19, 2025, Plaintiff filed a Second Amended Complaint, which is largely identical to the First Amended Complaint previously dismissed by this Court.[20] TUHS now moves to dismiss the Second Amended Complaint.[21]

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[23] In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[24] However, the Court "need not accept as true 'unsupported conclusions and unwarranted inferences'"[25] or "legal conclusions."[26]

## III.    DISCUSSION

### A. Racial Discrimination

A claim of purposeful racial discrimination under § 1981 is established when a plaintiff shows "(1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race

---

[20] Second Am. Compl. [Doc. No. 17].

[21] Def.'s Mot. to dismiss Second Am. Compl. [Doc No. 18].

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[23] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

[24] *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

[25] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

[26] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996))

by the defendant; and (3) discrimination concerning one or more of the activities enumerated in' § 1981, including the right to make and enforce contracts."[27] Section 1981 requires Mr. Cook to "initially plead . . . that, but for race, [he] would not have suffered the loss of a legally protected right."[28] Mr. Cook "is not required to prove discriminatory intent at the motion to dismiss stage, rather [he] need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of [it]."[29] Mr. Cook has not pled any facts that permit the inference that discrimination was the reasoning behind his termination, other than stating that he "believes that his termination was a result of racial discrimination and retaliation for engaging in protected activities."[30] This is a conclusory, subjective statement that cannot support a claim for racial discrimination under § 1981.

Mr. Cook's First Amended Complaint made three factual allegations that mention race: first, that he was the sole African-American male employee in his HVAC department; second, that a swastika was in his workspace; and third, that he was falsely accused of theft by his white colleagues.[31] Plaintiff's Second Amended Complaint identifies the same allegations, adding details to the claim he was accused of theft, specifically that Mr. Cook found the wallet and notified his coworkers, who accused him of theft, which resulted in security physically restraining him.[32] Plaintiff's Second Amended Complaint also alleges that after explaining to management that Mr. Cook's "white co-worker, another HVAC technician was ignoring work

---

[27] *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d. 548, 569 (3d Cir. 2002) (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)).

[28] *Comcast Corp. v. Nat'l Ass'n. of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

[29] *Bagic v. Univ. of Pittsburgh*, 773 F. App'x 84, 87 (3d Cir. 2019) (quotations omitted).

[30] Second Am. Compl. ¶ 18 [Doc. No. 17].

[31] Am. Compl. ¶¶ 8-10 [Doc. No. 10].

[32] Second. Am. Compl. ¶¶ 7-14 [Doc. No. 17].

orders, failing to clean up after repairs and committing other infractions" management did not address those infractions but instead "Mr. Kirk forced Plaintiff to clean up [the co-worker's] messes."[33]

While these allegations remain concerning, these facts do not assert plausible discrimination as they are generalized, undated, and insufficiently described such that it is unclear whether the events described are timely connected to his termination. Mr. Cook makes no allegations that his supervisor or employer harbored discriminatory animus nor does Mr. Cook describe any comparators, and importantly, he does not allege that he would not have been dismissed but for his race.[34] Additionally, Mr. Cook has not plausibly alleged pretext as Mr. Cook has not "point[ed] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[35]

Even in the light most favorable to the nonmoving party, there are no allegations in the Second Amended Complaint that raise a reasonable expectation that discovery will reveal that TUHS intended to discriminate against Cook on the basis of race.[36] As such, the Court will dismiss Mr. Cook's claim for racial discrimination.

---

[33] Second. Am. Compl. ¶ 14 [Doc. No. 17].

[34] Although Plaintiff describes one alleged scenario in which he was ordered to clean-up a white coworker's "messes," there is no date given for this alleged incident to consider whether or not it was timely connected to Mr. Cook's dismissal.

[35] *Qin v. Vertex, Inc.*, 100 F.4th 458, 474-75 (3d Cir. 2024) (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). As Mr. Cook has not pled when these events occurred, the Court cannot determine if the alleged discrimination was temporally proximate to Mr. Cook's termination such that the facts are "unusually suggestive of a retaliatory motive." Id. at 477.

[36] *Bagic*, 773 F. App'x at 87.

**B. Hostile Work Environment**

Mr. Cook alleges that he was subject to a hostile work environment.[37] In order to successfully survive a motion to dismiss, a claim for hostile work environment under § 1981 must allege facts sufficient to show that: (1) the plaintiff suffered intentional discrimination because of his race, color, and/or national origin; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person in similar circumstances; and (5) a plausible basis for *respondeat superior* liability existed.[38] Mr. Cook fails to plead any facts sufficient to determine that he suffered intentional discrimination or that the discrimination was severe or pervasive. Mr. Cook only alleges three undated incidents regarding potential racial animus at his workplace— the swastika in his workspace, his colleagues accusing him of theft, and being instructed to clean-up after his white coworker.[39] Isolated incidents cannot, on their own, support a claim for a hostile work environment.[40] Mr. Cook's Second Amended Complaint does not provide any non-conclusory, factual allegations to connect these incidents to his other claims of racial discrimination or his eventual firing. Because Mr. Cook does not include any details regarding his allegedly hostile work environment other than these isolated incidents, the claim for hostile work environment cannot proceed.

---

[37] Second. Am. Compl. ¶¶ 12-13 [Doc. No. 17].

[38] *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017).

[39] Second. Am. Compl. ¶¶ 7-14 [Doc. No. 17].

[40] *Stucke v. City of Phila.*, 685 F. App'x 150, 153 (3d Cir. 2017).

7

### C. Retaliation

Finally, Mr. Cook asserts he was subject to retaliation "for engaging in protected activities, including reporting the harassment and discriminatory treatment he faced."[41] In order to assert retaliation under § 1981, a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action.[42] While Cook's termination constitutes an adverse employment action,[43] Mr. Cook has not pled any factual allegations to support the inference that there is a causal connection between reporting the swastika symbol, false accusation of theft, and the conversation with management regarding the white coworker, and his eventual termination. These incidents are devoid of detail and undated, and while Mr. Cook did report them to his supervisor, he fails to plead that reporting these incidents to his supervisor was in any way connected to his termination. As such, his claim for retaliation will fail.

### IV.   CONCLUSION

While this Court finds the claims alleged by the Plaintiff to be of the utmost seriousness and has a deep interest in adjudicating these claims efficiently and carefully, this Court cannot accept a Complaint wherein the claims are unsupported and conclusory. For the reasons stated above, Defendant's Motion to Dismiss will be granted. An order will be entered.

---

[41] Second. Am. Compl. ¶ 18 [Doc. No. 17].

[42] *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006)

[43] *Fowler v. AT&T, Inc.*, 19 F.4th 292, 300-01 (3d Cir. 2021).